HOME INDUSTRY IRON WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7991.   Promulgated November 7, 1927.

1. Disallowance of a salary deduction, for the reason that it was not reasonable compensation for services rendered, approved.

2. Commissioner's determination that bonuses paid were in reality a distribution of profits approved.

3. The fair market value on March 1, 1913, of the petitioner's buildings determined.

4. Rate for purpose of a deduction under section 234(a)(7), Revenue Act of 1918, determined. Deduction under section 234(a)(7), Revenue Act of 1918, on account of machinery and equipment and patterns disallowed for lack of evidence.

5. Special assessment disallowed for lack of evidence.

*Geo. E. H. Goodner, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

The Commissioner determined deficiencies in income and profits taxes amounting to $13,305.51 for 1919, and to $2,882.48 for 1920. The petitioner alleges that there was error in (1) disallowing deductions for expenses incurred by officers in 1919; (2) disallowing a deduction of $3,900 as compensation paid to Mary Kling in each year; (3) disallowing a deduction of $21,000 as compensation paid to the officers and directors in 1920; (4) failing to allow depreciation in each year on the March 1, 1913, value of buildings, machinery and equipment, and patterns; and (5) denying special assessment for the year 1919 under section 328 of the Revenue Act of 1918. The first allegation of error was later waived.

### FINDINGS OF FACT.

The petitioner is an Alabama corporation, with its principal office at Mobile. It was organized in 1902 for the purpose of taking over a business founded in 1885 and operated as a sole proprietorship by A. Kling, Sr. Machinists, molders, boilermakers, blacksmiths, and pattern-makers were employed for the most part, in connection with repairing and reconditioning ships. Vessels were not built, but the tasks of reconditioning were sometimes so substantial as to assume the character of rebuilding rather than of ordinary repair work.

After the death of A. Kling, Sr., which occurred in 1917 or 1918, the petitioner remained a close corporation. The stockholders were his widow, Mary Kling, her two sons, C. W. Kling and A. Kling, Jr., and J. S. Bogue. The latter had been general manager for many years. Regular salaries totaling $16,399.55 were paid during the year 1919 to the above-named persons, all of whom were officers except Mary Kling, who was merely a director but received $3,900 of the above amount. In June, 1919, Mary Kling transferred 42 shares of stock to her daughter, Mrs. Goodman, and 42 shares to her son, Leo Kling. Thereafter, the stockholdings, the offices held, and the regular salary and bonus paid to the several officers and stockholders during the year 1920 were as follows:

| Stockholder | Shares held | Position | Regular salary | Bonus paid in July, 1920 |
|---|---|---|---|---|
| C. W. Kling | 42 | President | $4,560.00 | $3,000.00 |
| Leo Kling | 42 | Vice president | 2,704.90 | 3,000.00 |
| A. Kling, jr | 42 | Secretary and treasurer | 4,560.00 | 3,000.00 |
| Mrs. Goodman | 42 | Director | | 3,000.00 |
| J. S. Bogue | 42 | General manager | 5,340.00 | 3,000.00 |
| Mrs. Mary Kling | 90 | Director | 3,900.00 | 6,000.00 |

All stockholders were directors. Bogue and the three Kling sons devoted all of their time to the business. They did all of the office work during 1920, although a marked increase in business, evidenced by a gain in gross income from $329,606.62 in 1919 to $654,212.94 in 1920, multiplied their duties. Mrs. Goodman acted as a director, held no office, and had no regular appointed duties. She merely aided in a general way to obtain business for the petitioner. Mary Kling had assisted her husband in the development of the business and had become familiar with it. In August, 1920, she was 73 years of age and acted only in an advisory capacity during the years in controversy. She went down to the office several times monthly and her advice was sometimes obtained in business discussions at home.

The additional compensation above listed as bonuses was agreed upon and authorized during July of 1920 at a meeting, held informally in accordance with the usual practice. The bonus payments were made by checks a few days later. The petitioner had not theretofore paid compensation in the form of bonuses. Such payments, however, have been made in subsequent years. Dividends of $15,000 and $21,000, representing 50 per cent and 70 per cent of the outstanding capital stock, were declared in 1919 and 1920, respectively. The Commissioner disallowed the salary payments to Mary Kling for both years, as not representing a return for services rendered, and determined that the bonus payments made in 1920 represented a distribution of profits rather than reasonable compensation for services.

The petitioner's buildings consisted of two large brick structures. Both were built prior to March 1, 1913. No additions or improvements have been made since that date. A large proportion of the machinery in use was installed in the early years of the petitioner's business development. Repairs and replacements both prior and subsequent to 1913 were made by employees, the cost of labor and parts used being charged to expense. The machinery used in March, 1913, was substantially the same as that in use at present, save for some new machines purchased in the interim, at a cost of approximately $3,000.

Equipment on hand included a large number of patterns. These had been made from time to time as needed and stored for possible future use. As patterns became obsolete, they were discarded to make storage room for others. The petitioner not only used these patterns, but occasionally rented them for use by others. The cost of pattern making was sometimes charged against the customer in connection with the job for which they were needed. At other times the cost was too great to be thus included and was charged to expense. No pattern account has ever been set up on the petitioner's books and no cost records exist. The storage space devoted to patterns comprised three rooms, measuring 50 by 150 feet, 75 by 100 feet, and 45 by 100 feet. The number of patterns carried remained about the same from year to year. Some of those on hand on March 1, 1913, were still in use during the period in controversy, while others in storage then had been discarded from time to time during intervening years to provide room for others made during that time.

No deduction for exhaustion, wear and tear, or obsolescence of buildings, machinery or equipment, including patterns, was claimed in the returns or allowed in computing the deficiencies.

The Alabama Dry Dock & Shipbuilding Co., of Mobile, Ala., was engaged in a business similar in most respects to the one conducted by the petitioner. During 1919 and 1920 this company was a much larger organization than the petitioner and its volume of business was correspondingly greater. The two businesses differed in that the petitioner's work in the shipbuilding field was limited to repairs and reconditioning of vessels, while the other company built some new ships, including mine sweepers, during the years involved. The petitioner's business also included several features not included in the business of the other company. The Commissioner determined the petitioner's net income for 1919 to be $56,692.57, and its excess-profits-tax liability for that year to be $15,865.38, which is in excess of 27 per cent of the taxable income. The excess-profits tax paid by the Alabama Dry Dock & Shipbuilding Co. was 18.4 per cent of its net income in 1919, and 22.1 per cent of its net income in 1920. The Commissioner in his calculation of the deficiency for 1919 used $110,922.21 as the amount of the petitioner's invested capital for the year.

OPINION.

MURDOCK: This Board is slow to reject the opinion of a corporation's directorate as to the reasonableness of salaries. However, when the Commissioner has determined that a salary is unreasonable a certain burden of proof rests upon the petitioner to overcome the presumption in favor of the Commissioner's determination.

The determination herein denies the reasonableness of the salary of $3,900 paid to Mrs. Mary Kling in each of the years 1919 and 1920. The payment of such a salary to a woman 72 years old, who was merely a director giving occasional advice, is, to say the least, exceptional. Her services do not seem to exceed those that a principal stockholder might be expected to give to a corporation. It further appears that she is the mother of all but one of the other stockholders. In view of these circumstances we would require more convincing proof of the reasonableness of her salary than has been presented before we would hold that the Commissioner was in error as to this point.

It may well be that the officers of this corporation were deserving of more than their regular salaries as compensation for their extraordinary services in 1920. But the Commissioner has determined that the bonuses paid in that year were in reality a distribution of profits. They went to all stockholders in almost direct proportion of stockholdings without regard to services performed. Two of the stockholders rendered no services justifying the bonuses paid to them. These facts lead us to believe that the Commissioner was correct and we so hold.

The petitioner claimed that for the purpose of a deduction under section 234(a)(7) of the Revenue Act of 1918, its buildings had a fair market value on March 1, 1913, of at least $25,000 and that 2 per cent was a proper rate to allow for their exhaustion, wear and tear, and obsolescence. To support its contention it called two witnesses, each of whom knew the buildings in 1913. The one was an experienced contractor and the other was an architect. From their testimony we find that a value for the buildings of at least $25,000 has been established and that the deduction should be computed at the rate of one per cent for each year. The value and the rate might well be higher, but the burden of proof was upon the petitioner and the evidence does not justify any increase over these figures.

In order to allow any deduction under this section for machinery and equipment we must know not only the value or cost but also the proper rate to apply to that value or cost. There was some evidence from which we might find the March 1, 1913, value of the machinery and equipment, but there is no satisfactory or convincing evidence to establish the rate. It appears that exhaustion, wear and tear were offset to a very large extent by repairs charged to expense. The only rate mentioned was far from a proper one as shown by other evidence. Consequently we can not allow any deduction on account of this property. The same is true in regard to a deduction on account of patterns. The evidence gives us no idea of a proper rate.

The petitioner's remaining allegation of error is based on the Commissioner's refusal to give the benefit of sections 327 and 328 of the Revenue Act of 1918 in the computation of the petitioner's excess-profits tax for 1919. To show that this was error it alleges that its tax was disproportional to the tax of its competitors, due partly to the fact that its salary deductions were disallowed. The evidence fails to disclose any abnormalities within the intendment of section 327 (d) of the Act.

> *Judgment will be entered on notice of 15 days, under Rule 50.*

Considered by TRAMMELL, MORRIS, and SIEFKIN.